UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEREK TATE,<br><br>        Plaintiff,<br><br>    v.<br><br>J. ANDRES,<br><br>        Defendant. | No.  2:18-cv-0822 KJM AC P<br><br>ORDER AND FINDINGS & RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983.  Currently before the court is the defendant's motion for partial summary judgment based on plaintiff's failure to exhaust administrative remedies (ECF No. 72), which plaintiff has opposed (ECF No. 73).

    I.    <u>Procedural History</u>

The court screened the complaint and found that it stated a claim for relief against defendant Andres.  ECF No. 14.  Defendant answered the complaint (ECF No. 25) and filed the motion for partial summary judgment (ECF No. 72) after the close of discovery.

    II.    <u>Plaintiff's Allegations</u>

The complaint alleges that defendant Andres used excessive force against plaintiff in retaliation for filing a grievance against him, and then failed to get plaintiff medical treatment.  ECF No. 1.  Specifically, plaintiff claims that he filed a grievance against Andres, claiming that

defendant was interfering with plaintiff's ability to go to group therapy, and that after filing the grievance, he was able to attend therapy. Id. at 7-8. On the way back from therapy on February 8, 2016, plaintiff told defendant he wanted other guards to escort him, and Andres told him to shut up, that he did not get to choose who escorted him, and that he could "write it up." Id. at 9. When plaintiff asked if defendant was angry about his appeal, defendant responded that "around here 602's get you in trouble" and proceed to slam plaintiff's face into the wall after they got to the top of the staircase. Id. at 9-10. The force broke plaintiff's glasses, chipped his tooth, and injured his left foot, which got caught in the door railing when he lost his balance and fell. Id. at 10. Defendant then refused to alert his supervisor or medical about plaintiff's injuries, and plaintiff was not seen by medical staff for over two hours. Id. at 11. The following day, defendant taunted plaintiff about his broken glasses and recounted the assault to other correctional staff while in front of plaintiff. Id. at 12-13.

> III.   Defendant's Motion for Summary Judgment
>> A.   Defendant's Arguments

Defendant Andres moves for summary judgment as to plaintiff's retaliation claim on the ground that plaintiff did not exhaust his administrative remedies before filing suit. ECF No. 72. He alleges that plaintiff's initial grievance regarding this incident did not state that defendant's use of force was retaliatory and that plaintiff, in violation of the grievance policy, waited until the third level of review to make any allegations of retaliation. ECF No. 72-2 at 5-6. Because plaintiff's retaliation claim was a new issue at the third level, it was not addressed through the grievance and plaintiff did not properly submit and exhaust a separate grievance alleging retaliation. Id. at 5.

>> B.   Plaintiff's Response

"Pro se litigants must follow the same rules of procedure that govern other litigants." King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted), overruled on other grounds, Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012) (en banc). However, it is well-established that district courts are to "construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly." Thomas v. Ponder, 611

2

F.3d 1144, 1150 (9th Cir. 2010). The unrepresented prisoner's choice to proceed without counsel "is less than voluntary" and they are subject to "the handicaps . . . detention necessarily imposes upon a litigant," such as "limited access to legal materials" as well as "sources of proof." Jacobsen v. Filler, 790 F.2d 1362, 1364 n.4 (9th Cir. 1986) (alteration in original) (citations and internal quotation marks omitted). Inmate litigants, therefore, should not be held to a standard of "strict literalness" with respect to the requirements of the summary judgment rule. Id. (citation omitted).

Accordingly, although plaintiff has largely complied with the rules of procedure, the court considers the record before it in its entirety. However, only those assertions which have evidentiary support in the record will be considered.

Plaintiff argues first that defendant's motion for summary judgment should be denied because it is untimely. He contends further that he was denied meaningful access to the grievance process when staff failed to interview him regarding the grievance, leaving the final level of review as his only opportunity to raise the retaliation issue. ECF No. 73 at 1-4, 11-20.

C.   Defendant's Reply

Defendant argues his motion for summary judgment is not untimely, and there is no dispute of material fact as to plaintiff's failure to exhaust his retaliation claim. ECF No. 74 at 1-2.

IV.   Legal Standards for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

support the fact." Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see

whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Cent. Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

Defendant simultaneously served plaintiff with notice of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure along with their motion for summary judgment. ECF No. 72-1; see Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir. 1988) (pro se prisoners must be provided with notice of the requirements for summary judgment); Rand v. Rowland, 154 F.3d 952, 960 (9th Cir. 1998) (en banc) (movant may provide notice).

V.   Legal Standards for Exhaustion

Because plaintiff is a prisoner suing over the conditions of his confinement, his claims are subject to the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 520 (2002) ("§ 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences"). "[T]hat language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." Ross v. Blake, 578 U.S. 632, 638 (2016) (quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006)).

5

Failure to exhaust is "an affirmative defense the defendant must plead and prove." Jones v. Bock, 549 U.S. 199, 204, 216 (2007). "[T]he defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc) (citing Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996)). "[T]here can be no 'absence of exhaustion' unless *some* relief remains 'available.'" Brown v. Valoff, 422 F.3d 926, 936 (9th Cir. 2005) (emphasis in original). Therefore, the defendant must produce evidence showing that a remedy is available "as a practical matter," that is, "it must be capable of use; at hand." Albino, 747 F.3d at 1171 (citation and internal quotations marks omitted). "[A]side from [the unavailability] exception, the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.'" Ross, 578 U.S. at 639. "[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." Id. (citation omitted).

For exhaustion to be "proper," a prisoner must comply with the prison's procedural rules, including deadlines, as a precondition to bringing suit in federal court. Woodford, 548 U.S. at 90 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules."). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones, 549 U.S. at 218; see also Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion'" (quoting Jones, 549 U.S. at 218)).

As long as some potential remedy remained available through the administrative appeals process, even if it was not the remedy he sought, plaintiff was required to exhaust his remedies. Booth v. Churner, 532 U.S. 731, 741 & n.6 (2001) ("Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). The Supreme Court has identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, 578 U.S. at 643. "First, . . . an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. (citing Booth,

532 U.S. at 736). "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Finally, administrative remedies are unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 644.

When the district court concludes that the prisoner has not exhausted administrative remedies on a claim, "the proper remedy is dismissal of the claim without prejudice." Wyatt v. Terhune, 315 F.3d 1108, 1120 (9th Cir. 2003) (citation omitted), overruled on other grounds by Albino, 747 F.3d at 1168.

VI.     California Regulations Governing Exhaustion of Administrative Remedies

Exhaustion requires that the prisoner complete the administrative review process in accordance with all applicable procedural rules. Woodford, 548 U.S. at 90. This review process is set forth in the California Code of Regulations. In 2016, those regulations allowed prisoners to "appeal any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a) (2015).[1]

At the time plaintiff was proceeding through the appeals process, it was comprised of three levels of review for most types of appeals. Id., § 3084.7.[2] Appeals were "limited to one issue or related set of issues per each Inmate/Parolee Appeal form submitted." Id., § 3084.2(a)(1). The inmate was to "state all facts known and available to him/her regarding the issue being appealed at the time of submitting the Inmate/Parolee Appeal form, and if needed, the Inmate/Parolee Appeal Form Attachment." Id., § 3084.2(a)(4). Unless exempt, all appeals were "initially submitted and screened at the first level," which could be bypassed in certain circumstances. Id., § 3084.7(a). "The second level [was] for review of appeals denied or not

---

[1] Due to amendments which largely went into effect in late 2016, after plaintiff completed the appeals process, all citations to Title 15 of the California Code of Regulations, unless otherwise noted, are to the 2015 version, which was the version in effect at the time plaintiff was pursuing his administrative remedies.

[2] Section 3084.7 was subject to emergency amendment on June 2, 2016. However, the subsection subject to amendment did not apply to plaintiff's appeal and the regulation otherwise remained identical to the 2015 version.

7

otherwise resolved to the appellant's satisfaction at the first level, or for which the first level [was] otherwise waived by [the] regulations." Id., § 3084.7(b). Relevant to the issues here, the third level was "for review of appeals not resolved at second level," Id. § 3084.7(c).

Each prison was required to have an "appeals coordinator" whose job was to "screen all appeals prior to acceptance and assignment for review." Id., § 3084.5(b). The appeals coordinator could refuse to accept an appeal, whereupon "the inmate or parolee [would] be notified of the specific reason(s) for the rejection or cancellation of the appeal and of the correction(s) needed for the rejected appeal to be accepted." Id., § 3084.5(b)(3). "Administrative remedies [were] not . . . considered exhausted relative to any new issue, information, or person later named by the appellant that was not included in the originally submitted CDCR Form 602." Id., § 3084.1(b).

VII.   Undisputed Material Facts

The facts as they relate to exhaustion are largely undisputed. The parties agree that plaintiff pursued an appeal related to the claims in the complaint, and they agree on the timeline for that appeal as set forth below. Other facts have been obtained from documentation in the record, the accuracy of which is not in dispute.

At all times relevant to the complaint, plaintiff was a prisoner in custody at Mule Creek State Prison. ECF No. 1. On February 21, 2016, plaintiff submitted inmate appeal MCSP-16-00536, claiming that defendant had subjected him to excessive force. ECF No. 72-4 at 13, 15. The inmate appeal stated that

> [o]n February 8, 2016; C/O Andres slammed I/M Tate's face into the wall while escorting I/M Tate from C12-A section group; breaking I/M Tate's glasses and causing other injuries. I/M Tate suffered a chipped tooth as a result. I/M Tate further suffered a server [sic] neck strian [sic] and headaches following the assault. I/M Tate's foot was injured as well after falling to the floor after the assault. I/M Tate asked C/O Quick to alert the medical staff of the injuries. C/O Quick refused due to I/M Tate refusing to put hands through the food tray slot so that the hand cuffs could be removed. Immediately after this assault C/O Andres ordered I/M Tate to put his hands through the tray slot so that C/O Andres could remove them. I/M Tate refused. I/M Tate did not believe C/O Andres wanted to remove the cuffs. I/M Tate believed C/O Andres would continue to assault and act in an unprofessional manner. C/O Andres then did not report this incident to Sgt. Banks. I/M Tate asked C/O Andres to call the [illegible] watch Sgt. C/O Andres refused and walked away from the

8

cell.

Id.

In the "action requested" section, plaintiff requested

> [t]hat staff be required to wear body cameras w/audio capabilities while working in Administrative Segregation Units. That C/O Andres be charged with battery and any other violation of the law that applies to these sets of facts. That C/O Andres be held civilly responsible for the assault and injuries suffered by I/M Tate. That C/O Andres be held liable for monetary damages of $50,000 dollars and punitive damages as well. That staff be required to report assaults to the shift supervisor soon after the incident occurs. No report was generated in this matter. This proves consciencousness [sic] of guilt and violation of CDCR policy Title 15 3271; 3287; 3391(a); 3413(2); that a state administered lie detector test be given to both parties in this matter (I/M Tate & C/O Andres) Title 15 3293(a)(1). That my glasses be replaced at expense of CDCR.

Id.

This appeal was designated as a "staff complaint" and bypassed the first level of review. Defendant's Statement of Undisputed Facts ("DSUF") (ECF No. 72-3) ¶ 2; Response to DSUF (ECF No. 73 at 25-27) ¶ 2. Plaintiff's appeal was partially granted at the second level of review, where an appeal inquiry was conducted and found no violation of policy. DSUF ¶ 4; Response to DSUF ¶ 4; ECF No. 72-4 at 10-11. The second-level response also stated that plaintiff had been interviewed in relation to his allegations on February 9, 2016, that the interview was documented on video, and that during the interview he made the same claims as were written in the appeal. ECF No. 72-4 at 10.

Plaintiff submitted his appeal for third-level review on May 25, 2016. DSUF ¶ 5; Response to DSUF ¶ 5. The appeal was initially rejected, but plaintiff resubmitted it, and the resubmitted appeal was accepted. DSUF ¶¶ 6-7; Response to DSUF ¶¶ 6-7. The third-level appeal stated that

> I/M Tate is dissatisfied with the second level response. I/M Tate requested a lie detector exam in this matter. That request has not been addressed. C/O Andres also taunted I/M Tate the following day after the assault. C/O Andres approached I/M Tate's cell and asked I/M Tate where his glasses were, and how his foot was doing. C/O Andres also bragged to toher staff about the incident the following day. C/O Mason & Counselor Sua were present. C/O Andres was only able to get away with violating I/M Tate's constitutional rights as well as Title 15 3268.1(a) provision, et. al. because staff are not

9

> required to wear body cameras with audio capabilities. I/M Tate suffered a servere [sic] cut to the top & side of the left foot after C/O Andres slammed I/M Tate's face into the wall & I/M Tate fell. Sgt. Banks took a video taped interview of I/M Tate's injuries on 2-8-2016; the same day of the assault. I/M Tate wants that tape preserved for further proof of the assault, if it becomes necessary. There is a very good chance that the assault was the result of I/M Tate submitting an appeal on 1-27-2016 Log # MSCP HC 16048026. C/O Andres was named in that appeal.

ECF No. 72-5 at 14, 16.

The appeal was denied at the third level of review. DSUF ¶ 8; Response to DSUF ¶ 8. The third-level response summarized plaintiff's arguments as follows:

> It is the appellant's position that he [was] subjected to unnecessary use of force. The appellant alleges that on February 8, 2016, while being escorted from his assigned Mental Health Group to his assigned Administrative Segregation Unit (ASU) cell, Correctional Officer (CO) Andres slammed his face against the wall breaking his glasses and causing him to receive a foot injury. The appellant also alleges that he spoke with CO Quick and requested to see medical staff for an evaluation of his injuries and CO Quick refused to escort him to do so. In remedy, the appellant requests that staff be required to wear body cameras with audio capabilities while working in ASU; that CO Andres be charged with Battery and any other violation of the law; that he received [sic] punitive damages in the amount of $50,000; that staff be required to report assaults; that a lie detector test be given to both parties; and that his glasses be replaced at CDCR expense.

ECF No. 72-5 at 11. It further stated that "[t]he appellant has added new issues and requests to his appeal. The additional requested action is not addressed herein as it is not appropriate to expand the appeal beyond the initial problem and the initially requested action (CDC Form 602, Inmate/Parolee Appeal Form, Sections A and B)." Id.

VIII.   Discussion

As an initial matter, plaintiff's request to deny the motion for summary judgment as untimely will be denied. Because the parties were given thirty days to file dispositive motions and the thirtieth day fell on a weekend, the deadline continued until the following Monday, which is when defendant filed his motion. See ECF No. 71 (setting deadline at thirty days from service of order); Fed. R. Civ. P. 6(a)(1)(C) (continuing deadline to "next day that is not a Saturday, Sunday, or legal holiday" when last day of time period falls on a weekend). The motion for

10

1  summary judgment was therefore timely filed.

2  As to the issue of exhaustion, the parties are in agreement that plaintiff exhausted Appeal No. MCSP-16-00536 and that it related to defendant Andres alleged excessive use of force against plaintiff. They also agree that the appeal addressed the claim that Andres conduct was retaliatory, but disagree as to whether those claims were present from the first stage of the appeal, as required by the regulations. DSUF ¶¶ 3, 9; Response to DSUF ¶¶ 3, 9. As a result, they disagree as to whether that appeal was sufficient to exhaust the administrative remedies for plaintiff's retaliation claim.[3]

Plaintiff's primary argument is that he was prevented from utilizing the grievance process because he intended to explain his retaliation claim during the mandatory interview for his grievance but was denied when the second-level reviewer failed to interview him. ECF No. 73 at 12-18. He argues that the recorded interview taken in response to the use of force allegation was not a substitute for an appeal interview and that the reviewer's failure to conduct an interview as required by title 15, § 3084.7(e) of the California Code of Regulation[4] violated due process and forfeited any grounds for finding the appeal insufficient. Id.

Plaintiff submitted his appeal on February 21, 2016, and was transferred to Salinas Valley State Prison a few days later. ECF No. 72-4 at 23. It therefore appears possible that plaintiff's appeal fell within an exception to the interview requirement and the reviewer failed to document the exception. See Cal. Code Regs. tit. 15, § 3084.7(e)(4) (exception when prisoner is not present at institution where appeal was filed and other conditions are met). However, even assuming that an interview with plaintiff was required, plaintiff fails to demonstrate how the failure to conduct

---

[3] Although plaintiff indicates that he disputes DSUF ¶ 1, which states that Appeal No. MCSP-16-00536 was the only non-healthcare appeal he filed at Mule Creek State Prison between February 2016 and July 2016, he does not appear to be claiming that he filed any other grievances related to the claims in this case. ECF No. 73 at 25. Instead, both his objection to DSUF ¶ 1 and the documents he references appear to demonstrate that he wrote to the appeals office to follow up on Appeal No. MCSP-16-00536 after failing to receive a response to his initial appeal. Id. 25, 67-76. Accordingly, there are no other appeals at issue.

[4] Section 3084.7(e) provided that "[a]t least one face-to-face interview shall be conducted with the appellant at the first level of review, or the second level if the first level of review is bypassed" except under certain circumstances.

11

an interview made the appeals process unavailable to him. Plaintiff had the opportunity—and was required—to raise the retaliation issue in his initial inmate appeal to exhaust that claim, and he fails to identify any reason why he could not have included that information in his initial grievance. See Cal. Code Regs. tit. 15, § 3084.2(a)(4) (requiring inmate to "state all facts known and available to him/her regarding the issue being appealed at the time of submitting the Inmate/Parolee Appeal form"); Cal. Code Regs. tit. 15, § 3084.1(b) (administrative remedies not exhausted as to "any new issue, information, or person later named by the appellant that was not included in the originally submitted CDCR Form 602"). Plaintiff failed to raise the retaliation issue until he appealed to the third level, and the response explicitly advised him that he had raised new issues that were not addressed. ECF No. 72-5 at 11. While the response did not specifically identify which allegations were new, the summary of plaintiff's argument was devoid of any mention of retaliation, which should have notified him that that claim was not being addressed. Id.

Plaintiff also suggests that his initial request that Andres be held civilly responsible for the assault and "any other violations of the law that applies to these set(s) of fact(s)" was sufficient to set out a retaliation claim. See ECF No. 73 at 24. However, the initial appeal makes no mention of plaintiff's previous appeal (the alleged basis for retaliation) or of the comments Andres allegedly made regarding plaintiff's filing of grievances. See ECF No. 72-5 at 14, 16. As a result, there are no facts in the initial appeal providing notice that Andres' conduct was alleged to have been motivated by retaliatory animus.

IX. Conclusion

Plaintiff failed to properly exhaust his retaliation claim because he did not include allegations of retaliation in his initial grievance and did not submit a separate grievance on that issue. The motion for summary judgment on plaintiff's retaliation claim should therefore be granted.

X. Plain Language Summary of this Order for a Pro Se Litigant

It is being recommended that defendant's motions for partial summary judgment be granted and your retaliation claim be dismissed because you did not properly exhaust your

administrative remedies as to that claim before starting this case and you have not shown that you were prevented from exhausting. If these findings and recommendations are adopted, your case will go forward on your excessive force claim only.

Accordingly, IT IS HEREBY ORDERED that plaintiff's motion to dismiss the motion for summary judgment as untimely (ECF No. 73) is DENIED.

IT IS FURTHER RECOMMENDED that:

1. Defendant's motion for partial summary judgment (ECF No. 72) be GRANTED.

2. Plaintiff's claim of retaliation against defendant Andres be DISMISSED without prejudice for failure to exhaust administrative remedies.

3. This case proceed on plaintiff's excessive force claim against defendant Andres.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: April 12, 2022

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE